UNITED STATES of America, Appellee,

v.

**John W.S. McCORMICK,**
**Defendant–Appellant.**

**No. 1075, Docket 94–1376.**

United States Court of Appeals,
Second Circuit.

Argued Feb. 9, 1995.

Decided June 29, 1995.

---

Marjorie M. Smith, New York City (Henriette D. Hoffman, The Legal Aid Society, Federal Defender Div., Appeals Bureau, of counsel), for defendant-appellant.

David V. Kirby, Chief, Crim. Div., U.S. Attys. Office, Burlington, VT (Charles R. Tetzlaff, U.S. Atty., John M. Conroy, Asst. U.S. Atty., of counsel), for appellee.

Before: OAKES, KEARSE and CABRANES, Circuit Judges.

PER CURIAM:

This is the third appeal arising out of two separate cases in which defendant McCormick has been prosecuted for a single pattern of fraudulent activity. McCormick challenges his sentence in the second of these cases, brought in the District of Vermont. He contends, first, that the United States District Court for the District of Vermont, Franklin S. Billings, *Judge,* misapplied the Sentencing Guidelines in making his Vermont sentence consecutive, instead of concurrent, to the unexpired sentence resulting from his first prosecution in Connecticut. He contends, second, that his sentence violates the Double Jeopardy Clause in that it is based, in part, upon conduct for which he has already been sentenced in Connecticut.

While we find that McCormick's sentence unfairly punishes him more harshly than he would have been had all his fraudulent conduct been prosecuted in one case, we are bound by the Sentencing Guidelines and by precedent to affirm the district court's decision that McCormick's sentence run consecutively to his sentence in the Connecticut case. In addition, even if McCormick's Vermont sentence was based, in part, on conduct taken into consideration by the Connecticut court as relevant conduct, there is no Double Jeopardy violation. Accordingly, we affirm.

*Background*

McCormick was charged on February 7, 1991 in the District of Connecticut in a 31-count indictment with bank fraud and related

crimes. The alleged loss resulting from these crimes was $75,000. A few months later, on August 21, 1991, McCormick was charged in the District of Vermont with bank fraud, mail fraud, and related crimes in a 41–count indictment. The losses resulting from these alleged crimes exceeded $4 million.

After a jury trial, McCormick was convicted on all counts of the Connecticut indictment. At sentencing, the government filed a sentencing memorandum describing not only McCormick's fraudulent conduct in Connecticut but similar schemes that allegedly took place in other states, including Vermont. The Vermont schemes described in the memorandum included one to defraud Marine Midland Bank of $260,000. These other schemes were offered as relevant conduct pursuant to Guidelines § 1B1.3(a)(2). The court found that the loss arising from McCormick's conduct fell in the range of $2.5 million to $5 million, calling for a 13–level increase of the base offense level of 6 for fraud convictions. *See* U.S.S.G. § 2F1.1(b)(1)(N).

The court added two offense points for "more than minimal planning," pursuant to U.S.S.G. § 2F1.1(b)(2), creating a total offense level of 21. The Guideline sentencing range for this offense level combined with a criminal history category of I is 37–46 months. The court sentenced McCormick to the top of this range, 46 months of imprisonment on each count, to run concurrently, in addition to three years of supervised release, and restitution. We affirmed this sentence, thereby holding that the district court in Connecticut did not err by considering the Vermont frauds in calculating McCormick's sentence. *United States v. McCormick*, 993 F.2d 1012 (2d Cir.1992) (*McCormick I* ).

Following the Connecticut sentencing, McCormick filed a motion in Vermont District Court requesting that the Vermont indictment be dismissed on the grounds that further prosecution would violate the Double Jeopardy Clause of the Fifth Amendment. The district court found that further prosecution was barred by the Double Jeopardy

Clause only on those counts that were used by the Connecticut court to raise the offense level. *United States v. McCormick*, 798 F.Supp. 203, 210 (D.Vt.1992). The court thus dismissed 31 of the 41 counts in the Vermont indictment, but allowed the government to proceed against McCormick on the remaining ten counts, including count 41, which alleged a fraud against Marine Midland Bank. *Id.* at 210–12. As to the fraud against Marine Midland Bank, the court found that while the government's Connecticut sentencing memorandum mentioned a $260,000 loss to Marine Midland Bank, the district court in Connecticut did not consider this loss in calculating that the total loss attributable to McCormick was between $2.5 and $5 million. *Id.* at 212 & n. 12.

McCormick and the Government both appealed, and we affirmed the district court's ruling, holding that "the Double Jeopardy Clause precludes any prosecution of McCormick in Vermont based on the conduct used by the Connecticut court to increase his offense level." *United States v. McCormick*, 992 F.2d 437, 442 (2d Cir.1993) (*McCormick II* ).[1]

After the conclusion of his appeal, McCormick pled guilty to two counts of a superseding indictment in Vermont—one count of bank fraud involving Citizens Savings Bank, in violation of 18 U.S.C. § 1344, and one count of making a false statement to an FBI agent in violation of 18 U.S.C. § 1001. After a sentencing hearing on June 24, 1994, the district court found that under Guideline § 1B1.3(a)(2),[2] McCormick was responsible for related losses "that were part of the same course of conduct or common scheme or plan as the offense of conviction" in the amount of $691,444, as follows: (1) $637,444.50 incurred by Marine Midland Bank; (2) $13,000 incurred by Abraham George; and (3) $5,000 incurred by Howard Bank. Thus, the court added 10 points to the base offense level of 6 for fraud offenses, pursuant to Guideline § 2F1.1(K), as the loss totaled more than $500,000. The court also added two points

---

**1.** This decision was overturned by *Witte v. United States*, —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995).

**2.** The district court correctly applied the November 1, 1993 version of the Sentencing Guidelines.

for "more than minimal planning," *see* U.S.S.G. § 2F1.1(b)(2), to reach a total offense level of 18. McCormick sustained three criminal history points as a result of his Connecticut conviction, thereby placing him in Criminal History Category II. Thus, the applicable Guideline range was 30–37 months.

The district court sentenced McCormick to 35 months of imprisonment, to run consecutively with the Connecticut sentence, and to be followed by three years of supervised release. The court found that "5G1.3(c) is applicable in this case, and this is a reasonable and incremental punishment." Tr. of Sentencing Hearing of June 24, 1994, at 153.

This appeal followed.[3]

### Discussion

#### I. *Guideline Section 5G1.3(c)*

■ On appeal, McCormick argues that the district court was bound by § 5G1.3(c) and its accompanying application notes, in particular, Application Note 3, to impose a sentence that most closely approximated the sentence he would have received had he been sentenced at one time for all the Connecticut and Vermont offenses. Had the court done so, McCormick argues, the resulting losses from all his offenses would have been grouped, pursuant to § 5G1.2, and would have totaled less than $5 million, making the applicable sentencing range 37–46 months. Since, at the time of the Vermont sentencing, McCormick had already served 34 months of his 46–month Connecticut sentence, McCormick contends that the Vermont court was bound by § 5G1.3(c) to sentence him to, at most, 6 months of imprisonment, to run concurrently with the Connecticut sentence.[4]

■ As an initial matter, the Government contends that McCormick has waived this argument because, at sentencing, he mistakenly argued that § 5G1.3(b) applied and

did not raise an objection to his sentence under § 5G1.3(c). Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b); *United States v. Keppler*, 2 F.3d 21, 23 (2d Cir.1993). We have, however, made exceptions to this general rule in cases presenting novel or particularly difficult issues. *See Keppler*, 2 F.3d at 24; *United States v. Hudson*, 972 F.2d 504, 506 (2d Cir.1992). As we have recently noted, § 5G1.3 is "one of the most complex provisions of the Sentencing Guidelines," *United States v. Whiteley*, 54 F.3d 85, 87 (2d Cir.1995), and, at the time of McCormick's sentencing, this court had not addressed the ramifications of the 1992 amendments to § 5G1.3. In addition, while McCormick relied on the wrong subsection of § 5G1.3, he made essentially the same argument to the district court that he now raises on appeal. Consequently, we will address his argument on the merits. *See, e.g., Hudson*, 972 F.2d at 506.

Section 5G1.3(c) provides:

(Policy Statement) ... [T]he sentence for the instant offense shall be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense.

U.S.S.G. § 5G1.3(c) (1993).

Application Note 3 sets out a methodology to be used by sentencing courts to determine a "reasonable incremental punishment." Application Note 3 provides, in relevant part:

In some circumstances, such incremental punishment can be achieved by the imposition of a sentence that is concurrent with the remainder of the unexpired term of imprisonment. In such cases, a consecutive sentence is not required. To the extent practicable, the court should consider a reasonable incremental penalty to be a

---

3. McCormick filed a motion asking that he be released on bail pending this appeal. This court was informed in a letter from John M. Conroy, Assistant United States Attorney for the District of Vermont dated March 22, 1995, that McCormick is suffering from terminal cancer and has been released from custody by the Bureau of Prisons on an extended medical furlough. Ac-

cordingly, McCormick's motion was denied as moot.

4. We assume that this must have been an arithmetical error. A 12–month, not a 6–month, concurrent sentence would have resulted in a total effective sentence of 46 months.

sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time.

.    .    .    .    .

U.S.S.G. § 5G1.3 applic. note 3 (1993) (emphasis added).

This version of § 5G1.3 is a product of amendments which became effective November 1, 1992. Prior to those amendments, § 5G1.3(c) was a full-fledged Guideline section, not a policy statement, and its interpretive commentary specified:

> To the extent practicable, the court shall impose a sentence for the instant offense that results in a combined sentence that approximates the total punishment that would have been imposed under § 5G1.2 ... had all of the offenses been federal offenses for which sentences were being imposed at the same time.

U.S.S.G. § 5G1.3, applic. note 4 (1991) (emphasis added). Thus, under the previous version of the section, the Vermont district court would have been required, as McCormick contends, to impose a sentence which would approximate the sentence he would have received if all relevant conduct had been considered in the Connecticut case.

The amendments, however, give the district court more discretion to determine whether a sentence should be imposed consecutively or concurrently. *See Whiteley,* 54 F.3d at 89; *United States v. Lagatta,* 50 F.3d 125, 128 (2d Cir.1995). While we declined to decide in *Whiteley* whether the current version of § 5G1.3(c), as it is now a policy statement, is binding on district courts, we held that the methodology described in Application Note 3 is advisory only and not binding on the courts. *Whiteley,* 54 F.3d at 89.

Similarly, in *Lagatta,* we held that while sentencing courts should "consider" the methodology of Note 3 in determining a reasonable incremental punishment, "the commentary's plain language does not make it the exclusive manner in which a court must

sentence a defendant serving an undischarged term." 50 F.3d at 128. We further held that a sentencing court is not required to "explicitly demonstrate that it engaged in the multi-count sentencing methodology" established in the commentary. *Id.* What is, instead, required is that the court consider "the basic principle that a consecutive sentence should be imposed to the extent that it will result in a reasonable incremental penalty." *Whiteley,* 54 F.3d at 90.

In this case, Judge Billings expressly stated at sentencing that the consecutive sentence would result in a reasonable incremental penalty. He also noted that, in contrast to the earlier version of § 5G1.3, the 1993 version gave him discretion to determine whether McCormick's sentence should be consecutive or concurrent. While the judge did not perform on the record the calculations suggested by Application Note 3, he was not required to do so, *see Lagatta,* 50 F.3d at 128, and the calculations were presented to the court in the defendant's papers and at oral argument. Thus, the court met the requirements of § 5G1.3(c) as previously interpreted by this circuit, and, therefore, was within its discretion to sentence McCormick to a consecutive term of imprisonment.

We note that this result unfairly punishes McCormick for events to a real extent outside his control, namely, his prosecution in two separate fora for a single pattern of fraudulent activity. It is acknowledged by the Government that if McCormick had been subject to a single prosecution for his crimes, he would have received, at most, a single 46–month term of imprisonment. That he now is subject to an additional, consecutive 35–month term creates a perverse incentive for prosecutors. In order to maximize the sentences received by defendants, prosecutors can, where possible, try defendants in multiple jurisdictions for different but related crimes. As mentioned above, we are bound by the Guidelines and the law of this circuit to reach the result in this case. In our view, however, this problem deserves a renewed, close examination by the Sentencing Commission.

## II. *Double Jeopardy*

■ McCormick argues, secondly, that his Vermont sentence violates the Double Jeopardy Clause because it is based, in part, on losses incurred by Marine Midland Bank that were used by the Connecticut court as relevant conduct to calculate his Connecticut sentence.

The Supreme Court, however, has just held that it does not violate the Double Jeopardy clause to prosecute a defendant for activity that has been previously considered by a sentencing court as relevant conduct. *Witte v. United States,* —— U.S. ——, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995). In so holding, the Court found that when criminal activity is taken into account as relevant conduct under the Sentencing Guidelines, even though such use increases a defendant's offense level and thus his sentence, the defendant has not been "punished" for purposes of Double Jeopardy. *Id.* at ——, 115 S.Ct. at 2207.

In this case, even if McCormick's claims are true, the most that has occurred is that the Marine Midland Bank's losses were used as relevant conduct to enhance McCormick's Connecticut sentence, and then used again as relevant conduct to increase his Vermont sentence. The fraud against Marine Midland Bank was not the offense of conviction in either case. Thus, under *Witte,* McCormick has not yet been put in jeopardy *once* for that conduct, let alone twice. McCormick's claim, accordingly, fails.

### Conclusion

McCormick's sentence and the judgment of the district court is AFFIRMED.