ROSENN, Circuit Judge,
dissenting.
I believe that the appellant’s indictment and conviction in the United States District Court for the Eastern District of New York on the charge of failing to report the transportation of cash abroad was part and parcel of the larger conspiracy for which he was indicted and sentenced in the Eastern District of Pennsylvania (for importing heroin into the United States and money laundering), as well as the conspiracy for which he was indicted in the District of New Jersey. Thus, the sentences for the Pennsylvania and New Jersey offenses should have been imposed under U.S.S.G. § 5G1.3(b) concurrently to the undischarged term of imprisonment that he was then serving under the New York indictment and sentence. I, therefore, respectfully dissent.
I.
The two conspiracies in Pennsylvania and New Jersey involved the alleged importation of heroin from Nigeria. (Maj. op. at 1084) The arrest in New York at the JFK Airport on June 19, 1991 was for failure to report $790,000 in cash that appellant was carrying as he was about to board a flight for Lagos, Nigeria. Oser pled guilty to the charges in New York on November 26, 1991, and the court released him on bail pending the sentence which it imposed on July 16, 1993. The district court imposed sentence on Oser for the Pennsylvania and New Jersey offenses while he was serving time for the New York offense for failure to report the currency he was carrying. At the time of the Pennsylvania sentences, Oser had served 18 months of his 28 month New York sentence. The district court determined that his ten-year sentence on the Pennsylvania and New Jersey offenses should run consecutively to this sentence. Thus, Oser’s time on this sentence would not even begin to run until he had served ten more months in prison. Oser argues now, as he did at sentencing, that this determination fails to consider the applicable U.S.S.G. guideline provision, § 5G1.3(b).
This Guideline provision assists the courts in sentencing a defendant who is subject to an undischarged term of imprisonment. There are three subparts which limit the court’s discretion. Part (a) is applicable only when the instant offense was committed either while the defendant was serving a sentence, or after sentencing but before imprisonment, and mandates a consecutive sentence. The parties agree that this sub-part is inapplicable, as Oser’s subsequent offenses occurred between the time of his guilty plea and. his sentencing. Part (b) applies only if the undischarged term of imprisonment resulted from offenses that were fully taken into account in the determination of the offense level for the present offense, and mandates that the prison terms run concurrently. It provides that if subsection (a) does not apply and “the undischarged term of imprisonment resulting from offenses that have been fully taken into account in the determination of the offense level for the instant offenses the sentence for the instant offenses shall be imposed to run concurrently to the undischarged term of imprisonment.” Part (c), called the policy statement, applies in all other cases, and permits the court to impose a consecutive, partially consecutive, or concurrent sentence as desired in order to achieve a reasonable incremental punishment for the instant offense.
I believe that the record establishes that Oser’s New York conduct was taken into account in the conspiracy prosecutions. Under a reading of Application note 2 to *-494 § 5G1.3, subsection (b) could include federal charges in other jurisdictions for the same criminal conduct, or for different criminal charges that were part of the same course of conduct. Here, the charges in all three states stem from one ongoing course of criminal conduct concerning a large-scale conspiracy to import heroin.
The Government argues that the” Pennsylvania and New Jersey indictments, although they involve a continuation of Oser’s drug smuggling activities, cover different time periods and different co-conspirators. Therefore, the Government claims, they are different courses of conduct. This, it seems, is contradicted by their consolidation and by the concurrent sentences imposed for the Pennsylvania and New Jersey charges.
More importantly, the conduct for which Oser was sentenced in New York, failure to file a currency report, is cited as an overt act of the conspiracy charged in Pennsylvania. The Government has thus acknowledged that the act is part of the same course of conduct. Because it has used this act to charge Oser with conspiracy, it is estopped from arguing on appeal that the act is wholly irrelevant to the conspiracies charges to which he pled guilty. The Government has, in effect, recognized that the New York offense is part of the same course of conduct as the present crime, by including it as an overt act of the conspiracy described in the present indictment. This is supported by the response of Seth Weber, Assistant United States Attorney, who at sentencing of Oser in Philadelphia made this statement:
“And when you talk about these criminal charges being an aberration for Mr. Oser we may be missing the boat here because we’re dealing with criminal conduct that spanned two years, from 1991 through 1993, that we know of. 1991 when he attempted to take $800,000 in cash out of the country without reporting it knowing that it was a result of drug proceeds. That’s what started this ball rolling for Mr. Oser.”
Therefore, subsection (b) of § 5G1.3 applies.
The point I make is not only of importance to Oser but to the federal criminal justice system generally. It is not unusual for some prosecutors to split up a single conspiracy and attempt to charge several discrete conspiracies, with indictments in different jurisdictions, and thereby obtain multiple sentences. In United States v. McCormick, 58 F.3d 874 (2d Cir.1995), the defendant was sentenced in two district courts in the Second Circuit for separate frauds against two separate banks, each part of an ongoing fraud conspiracy. The court considering the second indictment dismissed 31 of the 41 counts, in recognition of possible double jeopardy issues, but permitted prosecution of the other ten counts. It then sentenced the defendant to serve his sentence consecutive to the preceding sentence.[1] Although the Second Circuit affirmed this decision, it noted:
[Tjhis result unfairly punishes McCormick for events to a real extent outside his control, namely, his prosecution in two separate fora for a single pattern of fraudulent activity. It is acknowledged by the Government that if McCormick had been subject to a single prosecution for his crimes, he would have received, at most, a single 46-month term of imprisonment. That he is now subject to an additional, consecutive 35-month term creates a perverse incentive for prosecutors. In order to maximize the sentences received by defendants, prosecutors can, where possible, try defendants in multiple jurisdictions for different but related crimes. As mentioned above, we are bound by the Guidelines and the law of this circuit to reach the result in this case. In our view, however, this problem deserves a renewed, close examination by the Sentencing Commission.
McCormick, 58 F.3d at 878.
The effect of the prosecutions in the three jurisdictions in the instant case is to maximize Oser’s sentence for what is, in effect, the same course of conduct. This is impermissible under the Guidelines, and unreasonable.
Prosecutors have a great deal of discretion in the way they choose to frame charges *-493 against a defendant. In this ease, rather than limit themselves to Oser’s substantive offenses, the prosecutors set out to charge him with conspiracy, and cited his substantive offenses as overt acts in furtherance of that conspiracy. This is well within prosecu-torial discretion. However, having chosen to frame their charges in such a fashion, they are also bound by its limitations. Oser’s failure to file a currency report is either a substantive offense in New York, or an overt act in furtherance of the Pennsylvania conspiracy. However, it borders on double jeopardy to permit prosecutors to have it both ways, and for the court to sentence Oser twice for conduct essentially part of the conspiracy for which he is being separately sentenced. The gravamen of Oser’s concern is not that he was indicted in three jurisdictions, but having been indicted in New York for conduct that was in furtherance of the overall conspiracy, the ultimate sentence imposed in Pennsylvania should have been concurrent to the sentence remaining to be served under the New York indictment, and not consecutive.
Therefore, when a defendant is convicted of conspiracy in one jurisdiction and the evidence includes criminal conduct for which he has been previously prosecuted and convicted in another federal jurisdiction, or he has been previously prosecuted and convicted for different criminal charges that were part of the same conspiratorial course of conduct, the sentence imposed in the later conviction must be concurrent with the first sentence.
The district court in Pennsylvania, therefore, should have applied U.S.S.G. § 5G1.3(b) in sentencing Oser and have the sentence it imposed run concurrently with the portion of the New York sentence which had not yet been served.
Accordingly, I respectfully dissent.

. The district court in that case specifically noted the existence of U.S.S.G. § 5G1.3, and determined that this was a suitable incremental punishment.