**UNITED STATES of America,**
**Appellee,**

v.

**Michael J. LISA, Defendant–Appellant,**

**Robert Kunda, Philip Salerno,**
**Defendants.**

**No. 04–3209–CR.**

United States Court of Appeals,
Second Circuit.

Oct. 25, 2005.

Norman Trabulus, Garden City, New York, for Appellant.

Mark J. Lesko, Assistant United States Attorney (Cecil C. Scott, Assistant United States Attorney, on the brief), for Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Brooklyn, New York, for Appellee.

PRESENT: MINER, RAGGI, Circuit Judges, and KARAS, District Judge.[1]

### SUMMARY ORDER

Defendant Michael J. Lisa pleaded guilty to a mail fraud conspiracy to double bill for medical services. *See* 18 U.S.C. § 371. Presently incarcerated to a term of one-year and one-day—a downward departure from his 21–27 month Sentencing Guidelines range pursuant to U.S.S.G. § 5K1.1—Lisa appeals his sentence on the grounds that the district court erred (1) in ordering restitution to Jamaica Hospital in the amount of $321,608.18 and (2) in using that loss amount as the basis for calculat-

ing his Guidelines offense level. The government consents to an order by this court vacating the restitution provision of Lisa's sentence and remanding to the district court for resentencing as to restitution. It opposes Lisa's challenge to his Guidelines calculation as without merit, but it consents to a remand for further proceedings consistent with *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision.

### 1. *Plain Error Review*

Because Lisa did not object in the district court to the Guidelines offense level or restitution order, we review his challenges on appeal only for plain error. *See United States v. Cotton*, 535 U.S. 625, 631–32, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *United States v. Williams*, 399 F.3d 450, 454 (2d Cir.2005). Plain error review requires us to find (1) error, (2) that is plain, and (3) that affects substantial rights. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). In such narrow circumstances, we may notice a forfeited error, but only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.; see United States v. Catoggio*, 326 F.3d 323, 326 (2d Cir.2003) (recognizing that improper restitution order can constitute plain error).

### 2. *Restitution*

The law requires a sentencing court "to order full restitution to the identifiable victims of certain crimes, including fraud, without regard to a defendant's economic circumstances." *United States v. Zak-*

---

[1]. The Honorable Kenneth M. Karas, of the United States District Court for the Southern District of New York, sitting by designation.

*hary,* 357 F.3d 186, 189 (2d Cir.2004); *see* 18 U.S.C. §§ 3663A(c)(1); 3664(f)(1)(A). Absent an agreement by the parties, the court may order restitution only for losses attributable to the offense of conviction, not for related conduct. *See United States v. Silkowski,* 32 F.3d 682, 688–89 (2d Cir. 1994); *see also* 18 U.S.C. § 3663A(a)(3).

When the offense of conviction "involves as an element a scheme, conspiracy, or pattern of criminal activity," a convicted co-conspirator is liable to pay restitution to persons "directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663A(a)(2); *see United States v. Boyd,* 222 F.3d 47, 50 (2d Cir.2000) *(per curiam ).* In *Boyd,* we noted that this conclusion obtained "even on uncharged or acquitted counts." *Id.* at 51. In that case, a defendant acquitted on a conspiracy count was nevertheless ordered to pay restitution for losses sustained by the victims of the conspiracy. The court noted that, the jury's guilty verdict on *Pinkerton* charges, *see Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), necessarily meant that the jury found that the defendant participated in the conspiracy, *see United States v. Boyd,* 222 F.3d at 51. Neither *Boyd* nor any other case, however, holds that a defendant can be required to pay restitution for losses caused by acquitted or uncharged conduct that extends beyond the "scheme, conspiracy, or pattern of criminal activity" included *"as an element"* of the offense of conviction. 18 U.S.C. § 3663A(a)(2) (emphasis added). Indeed, such a ruling might present *Apprendi* concerns. *See Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In this case, the sole count of conviction is conspiracy. It is not clear from the record, however, whether the district court's restitution order of $321,608.18

payable to Jamaica Hospital reflects a loss fairly attributable to the charged fraud conspiracy. Pursuant to that scheme, Lisa and his confederates double billed for services provided by Jamaica Hospital, and then kept the payments. At the same time, they apparently also profited by failing to remit to Jamaica Hospital payments collected on proper initial billings. In neither circumstance were Lisa and his partners entitled to the money retained, but because only the double billing scheme was an element of the charged conspiracy—the other fraud being simultaneous but distinct—mandatory restitution applied only to the harms or losses caused by the pattern of double billing. Thus, the district court would have committed error if, in ordering restitution in the amount of $321,608.18, it also compensated Jamaica Hospital for the loss of its legitimate billings.

A further concern arises as to whether Jamaica Hospital can properly be considered a victim of the double billing fraud. It would appear that, in the first instance, the victims of this fraud were insurance companies who paid the duplicative bills. On the other hand, if Jamaica Hospital compensated these insurance companies for their losses, the hospital would be entitled to an award of restitution. *See* 18 U.S.C. § 3664(j)(1) ("If a victim has received compensation from ... any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution ... be paid to the victims before any restitution is paid to such a provider of compensation.").

Because the record only permits us to identify these concerns, not necessarily to resolve them in favor of Lisa, we can hardly conclude that he has demonstrated er-

ror, much less plain error, by the district court in ordering restitution. Nevertheless, because the government consents to our vacating the restitution order and remanding the case to permit resentencing on restitution after further development of the record, we so order. In so proceeding, we are mindful that victims, as well as Lisa, have an interest in the correct resolution of this issue. Accordingly, we place no restrictions on the district court's ability on remand to identify *any* victims of the charged conspiracy and to order restitution in the full amount of the losses sustained.

3. *The Guidelines Offense Level Calculation*

■ Although the district court did not sentence Lisa within his Sentencing Guidelines range, the court framed its departure by reference to the Guidelines, which, at the time, it understandably thought were mandatory. *See* Sentencing Tr. at 16 ("I am going from the level 16 to a level 13, which would place you in a 12–to–18 month category."). Because such an error must be deemed plain on appellate review, *United States v. Williams,* 399 F.3d at 460, the government consents to a *Crosby* remand. On such a remand, the district court must still "determine the applicable Guidelines range." *United States v. Crosby,* 397 F.3d at 112. Accordingly, we address Lisa's challenge to the district court's calculation of the Guidelines range, and we conclude that his argument fails at the first step of our plain error analysis.

U.S.S.G. § 2F1.1(b)(1)(I) (1998) provided for an eight-level increase in offense level if the defendant's charged fraudulent conduct caused a loss exceeding $200,000 but less than $350,000. In his pre-sentence interview with the Probation Department, Lisa admitted earning "approximately $300,000 through the commission of the offense." Pre–Sentence Report at ¶ 11.

Lisa nevertheless submits that the district court erred in identifying Jamaica Hospital as the victim of any loss. The argument fails to establish a Guidelines error. The Guidelines, unlike the restitution statute, do not require losses to be ascribed to specific victims. *See United States v. Singh,* 390 F.3d 168, 192 (2d Cir.2004) (concluding that specific victims of billing fraud need not be identified when "[s]ufficient information was available to support the inclusion of the false claims and the estimate of loss due to the fraudulent scheme"). Indeed, the Guidelines are sufficiently flexible in calculating loss that, when no other reliable means is available, loss may be calculated without any reference to the victim; "the profit realized by the defendant may also provide an alternative loss estimate." *United States v. Canova,* 412 F.3d 331, 354 n. 23 (2d Cir.2005) (citing U.S.S.G. § 2F1.1, cmt. n. 9).

Equally unconvincing is Lisa's argument that the district court erred in failing to distinguish between any profits he derived from unremitted double billings and those derived from unremitted legitimate billings. The Guidelines recognize that "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction" may be considered in determining the relevant loss. U.S.S.G. § 1B1.3(a)(2); *see United States v. Carboni,* 204 F.3d 39, 47 (2d Cir.2000); *United States v. McCormick,* 993 F.2d 1012, 1013 (2d Cir.1992). Thus, the loss calculation relevant to the Sentencing Guidelines is more flexible and expansive than that applicable to restitution. *See United States v. Carboni,* 204 F.3d at 47. It extends beyond losses caused by schemes that are *elements* of the offense of conviction, *see* 18 U.S.C. § 3663A(a)(2), to include losses attributable to "the same course of conduct," U.S.S.G. § 1B1.3(a)(2). The record demonstrates that Lisa's unwarranted retention of legitimate payments could reason-

ably be viewed as part of the same course of conduct as his retention of double payments. Defendant operated the parallel schemes simultaneously to provide a stream of money (that was not his) to finance business and personal activities. In sum, there was no error in including all bill payments wrongfully procured or retained by Lisa in the Guidelines calculation of loss.

For the foregoing reasons, the judgment of the district court entered on May 18, 2004, is VACATED IN PART insofar as it orders restitution, and the case is REMANDED for resentencing in that limited respect. As to the remainder of the sentence, we REMAND for further proceedings consistent with this court's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir.2005).